UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARIAN BETTY YOUNG,

    Plaintiff,

    v.

CAROLYN W. COLVIN,

    Defendant.

Case No. 15-cv-01029-KAW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 17

    Plaintiff Marian Betty Young seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, and the remand of this case for payment of benefits, or, in the alternative, for further proceedings. Pending before the Court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. Having considered the papers filed by the parties, and for the reasons set forth below, the Court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's cross-motion for summary judgment, and REMANDS the case for further proceedings.

## I.  BACKGROUND

    On July 11, 2012, Plaintiff Marian Betty Young filed her application for Title XVI, Supplemental Security Income disability benefits. Administrative Record ("AR") 185. Plaintiff alleges that she has been disabled since June 1, 2012. *Id.* Plaintiff's claim was initially denied on September 27, 2012. AR 19. Plaintiff filed a timely request for hearing on December 27, 2012, and a hearing was held on June 19, 2013. AR 19. Plaintiff requested review of the ALJ's decision by the Appeals Council, but was declined on January 5, 2015. AR 1-5.

    Plaintiff is fifty-three years old. AR 166. Plaintiff completed the 10th grade. AR 42. She was never married and has one child. AR 41. Plaintiff worked as a caterer until 2007, when she stopped working due to being allegedly unable to work around people without having panic

attacks. AR 43-44, 190. She contends that she has not engaged in substantial gainful activity since July 11, 2012. AR 21, 166. Plaintiff alleges disability based on her mental impairments, including affective disorder, an anxiety disorder with panic attacks, and post-traumatic stress disorder (PTSD). AR 22-23. She also alleges that Dupuytren's contracture of her hands further limits her ability to work. (Pl.'s Mot. at 1, Dkt. 16.) In addition, she alleges that she suffers a burning sensation caused by a torn ligament in her shoulder, and nerve damage in her right leg. AR 23.

Two physicians have offered medical evidence in regard to Plaintiff's physical condition. On July 10, 2012, treating physician Jennifer A. Wilson, M.D. reported abnormal clinical signs associated with a diagnosis of Dupuytren's contracture. AR 275.  In August 2012, an x-ray of Plaintiff's left hand disclosed flexion deformity at the MCP joint of fingers. AR 23. Dr. Wilson recommended surgical intervention, and referred Plaintiff to an orthopedic surgeon, but there is no evidence that the surgery was performed. AR 23, 276.

On August 29, 2012, Plaintiff underwent a consultative physical evaluation by Johnathan Schwartz, M. D. AR 261.  Dr. Schwartz observed Plaintiff's problem with fine motor skills using the left hand and numbness, hypersensitivity, and swelling of the right leg. AR 265.  Dr. Schwartz reported Dupuytren's contracture of the left palm, and hypersensitivity on the right thigh. AR 264-65.  In his opinion, Plaintiff retained the ability for medium exertion and frequent handling and fingering. *Id.*

Three physicians offered medical evidence in regards to Plaintiff's mental health. As Plaintiff's treating physician, Dr. Wilson has also provided medical care for Plaintiff's mental health. AR 23. On June 3, 2011, Dr. Wilson reported that she has prescribed anti-depressant medications to treat Plaintiff's mental issues. AR 281. On May 21, 2013, Dr. Wilson completed the "Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment" form and reported that Plaintiff suffers 15 "moderate" limitations of work-related mental abilities, which means that those limitations "seriously interfere[] with [her] ability to perform the designated activity on a regular and sustained basis, *i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule." AR 451-453. Furthermore, Dr. Wilson indicated that Plaintiff suffers substantial loss of the "ability to deal with changes in routine work setting" and the "ability

2

United States District Court
Northern District of California

1    to respond appropriately to supervision." AR 454. Dr. Wilson opined that Plaintiff "has significant

2    problems with memory, focus and attention. She suffers from PTSD, depression and anxiety.

3    These conditions make it challenging at times to manage social situations, relationships with co-

4    workers or employers or handle the stress of changing routines in the work setting." AR 455. In

5    her opinion, the severity of these limitations lasted or is expected to last twelve continuous

6    months. AR 454.

7         On June 5, 2013, Plaintiff's treating therapist, Leyla Brusatori, Ph.D., evaluated Plaintiff's

8    mental health by answering the same questionnaire as Dr. Wilson, as well as furnishing a narrative

9    to explain the questionnaire. AR 456-62. Dr. Brusatori reported that Plaintiff suffers 15

10   "moderately severe"[1] to "severe"[2] limitations of work related mental abilities. AR 459-460. She

11   noted that Plaintiff "has a long history of severe abuse and trauma experience in her childhood and

12   adolescence at the hands of her mother, as well as severe abuse and trauma in adulthood where she

13   was beaten, violently attacked and sexually assaulted." AR 456. Dr. Brusatori assigned Plaintiff a

14   GAF score of 50 and substantial loss in all four[3] of the basic work-related activities. AR 457.  She

15   opined that Plaintiff "is unable to handle a normal work routine, criticism from others and is

16   unable to remember simple or detailed instructions . . . . Ms. Young's symptoms significantly

17   interfere with ability to work around others." AR 457. In Dr. Brusatori's opinion, the severity of

18   these limitations lasted or is expected to last twelve continuous months. AR 461.

19        On August 28, 2012, Plaintiff underwent a consultative psychiatric evaluation by John

20   Kiefer, Psy. D. AR 319. Dr. Kiefer did not have medical records available to review. AR 319.

21   Accordingly, the psychiatric evaluation consisted of an interview and a mental status examination

22   in which Dr. Kiefer diagnosed "panic disorder without agoraphobia; methamphetamine

---

[1] A moderately severe limitation "seriously interferes with the individual's ability to perform the designated activity, and precludes the ability to perform the designated activity on a regular and sustained basis, *i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule." AR 458.
[2] A severe limitation "precludes the individual's ability usefully to perform the designated activity or to sustain performance of the designated activity." AR 458.
[3] The four basic work related activities are (1) ability to understand, remember, and carry out simple instructions, (2) ability to make judgments that are commensurate with the functions of unskilled work, *i.e.*, simple work-related decisions, (3) ability to respond appropriately to supervision, co-workers and usual work situations, and (4) ability to deal with changes in a routine work setting. AR 461.

1   dependence, early remission; polysubstance dependence, early remission; learning disorder; and

2   reading disorder." AR 322. He noted that Plaintiff has a history of alcohol and substance abuse,

3   but has abstained from all substances for 90 days. AR 321. He reported GAF score of 55, and

4   opined that Plaintiff is capable of following simple instructions and dealing with supervisors and

5   co-workers. AR 323. He did not offer an opinion on Plaintiff's ability to deal with criticism at a

6   work place. AR 323. In his opinion, "[t]he likelihood of the claimant's mental condition

7   improving within the next 12 months is fair, contingent on maintaining sobriety." AR 323. Dr.

8   Kiefer did opine, however, that "[t]he likelihood of the claimant emotionally deteriorating in the

9   work environment is moderate." *Id.*

10      Two marriage-and-family therapists ("M.F.T.") and Plaintiff's counselor offered their

11   opinions regarding how her mental impairments affect her ability to work.  On September 12,

12   2012, Plaintiff underwent mental health assessment by Sharon McLaughlin M.F.T., who observed

13   that Plaintiff has alcohol dependence, anxiety, and a mood disorder with features of a borderline

14   personality disorder. AR 23, 397.  Ms. McLaughlin assigned Plaintiff a GAF score of 48, and

15   opined that she "had traumatic experiences, which could indicate [PTSD] . . . [and] has difficulty

16   performing tasks such as paperwork, but states that she has problems filling out forms because she

17   has a learning disability." AR 397-98.

18      Paula Castaneda, M.F.T., who has been assisting Plaintiff with transitional housing, opined

19   that Plaintiff's "mental health is a barrier to greater functioning and gainful employment at this

20   time." AR 383. Ms. Castaneda further opined that while Plaintiff presents well in interviews and

21   meetings, "follow up indicates much of what transpired is forgotten creating confusion, missed

22   appointments and missing required information/documents." *Id.*  On June 6, 2013, Ms. Castaneda

23   completed the "Medical Source Statement Concerning the Nature and Severity of an Individual's

24   Mental Impairment" form. AR 465. Therein, she indicated that Plaintiff suffers substantial loss on

25   all four basic work related activities. AR 466.[4]  She stated that Plaintiff "presented as higher

26   functioning at first meeting. Mariam has demonstrated one of the more severe anxiety disorders I

27

28   [4] *See supra* note 3.

United States District Court
Northern District of California

1   have ever witnessed." AR 467.

2      Plaintiff's counselor, Chris Malan, has been assisting Plaintiff with daily needs,

3   counseling, applying for permanent housing, and filing for social security benefits since July 9,

4   2012. AR 407.  In a series of progress notes, Mr. Malan reported that Plaintiff "lacks focus and

5   has anxiety such that she becomes immobilized. . . . Marion tends to hide her mental health issues

6   because she is proud and emba[r]rassed about her mental health symptoms and she puts up a good

7   front. Yet, she is unable to work, she is troubled about her life, lacks focus and concentration,

8   anxious and self-critical of herself. She is homeless and unable to work." AR 414.

9      On June 19, 2013, Plaintiff testified that she was unable to work because of her inability to

10  cope. AR 42. She explained that if "I'm at work, and I get some sort of criticism, or I get

11  pressured by anybody, I – not voluntarily, but it triggers . . . I guess it's one of my triggers to

12  where I get confused. I don't understand the question, and I just shut down." AR 42-43.  She

13  testified that she lives in a clean and sober house with others, but she has her own room and

14  spends most of her time there. AR 58. She and her housemates have rotating chores, such as

15  cleaning the bathroom once a week. AR 58. She is able to do this, but there were instances when

16  her housemates criticized her work. AR 59. In those instances, she felt like she was being attacked

17  and became defensive. AR 59.

18     In a decision dated August 2, 2013, the ALJ found that Plaintiff was not disabled at any

19  time from July 11, 2012 through the date of the decision. AR 19-30.  Plaintiff requested review of

20  the ALJ's decision by the Appeals Council, and the ALJ's decision became the final decision of

21  the Commissioner when the Appeals Council denied review on January 5, 2015. AR 1-5.  Plaintiff

22  now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

23     On August 10, 2015, Plaintiff filed her motion for summary judgment. (Pl.'s Mot., Dkt.

24  No. 16.) On September 4, 2015, the Defendant filed its opposition and cross-motion for summary

25  judgment. (Def.'s Opp'n, Dkt. 17.) On September 24, 2015, Plaintiff filed her reply (Pl.'s Reply,

26  Dkt. 20.)

27              **II.    LEGAL STANDARD**

28     A court may reverse the Commissioner's denial of disability benefits only when the

1    Commissioner's findings are 1) based on legal error or 2) are not supported by substantial

2    evidence in the record as a whole.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097

3    (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a

4    preponderance"; it is "such relevant evidence as a reasonable mind might accept as adequate to

5    support a conclusion." *Id.* at 1098; *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  In

6    determining whether the Commissioner's findings are supported by substantial evidence, the

7    Court must consider the evidence as a whole, weighing both the evidence that supports and the

8    evidence that detracts from the Commissioner's conclusion.  *Id.* "Where evidence is susceptible

9    to more than one rational interpretation, the ALJ's decision should be upheld." *Ryan v. Comm'r*

10   *of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

11           Under Social Security Administration ("SSA") regulations, disability claims are evaluated

12   according to a five-step sequential evaluation. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir.

13   1998). At step one, the Commissioner determines whether a claimant is currently engaged in

14   substantial gainful activity. *Id.*  If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b).  At

15   step two, the Commissioner determines whether the claimant has a "medically severe impairment

16   or combination of impairments," as defined in 20 C.F.R. § 404.1520(c). *Reddick*, 157 F.3d 715 at

17   721.  If the answer is no, the claimant is not disabled. *Id.*  If the answer is yes, the Commissioner

18   proceeds to step three, and determines whether the impairment meets or equals a listed impairment

19   under 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d).  If this requirement is

20   met, the claimant is disabled. *Reddick*, 157 F.3d 715 at 721.

21           If a claimant does not have a condition which meets or equals a listed impairment, the

22   fourth step in the sequential evaluation process is to determine the claimant's residual functional

23   capacity ("RFC") or what work, if any, the claimant is capable of performing on a sustained basis,

24   despite the claimant's impairment or impairments. 20 C.F.R. § 404.1520(e). If the claimant can

25   perform such work, he is not disabled. 20 C.F.R.  § 404.1520(f). RFC is the application of a legal

26   standard to the medical facts concerning the claimant's physical capacity. 20 C.F.R. § 404.1545(a).

27   If the claimant meets the burden of establishing an inability to perform prior work, the

28   Commissioner must show, at step five, that the claimant can perform other substantial gainful

United States District Court
Northern District of California

6

1  work that exists in the national economy. *Reddick*, 157 F.3d 715 at 721. The claimant bears the

2  burden of proof in steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th

3  Cir. 2001). The burden shifts to the Commissioner in step five. *Id.* at 954.

### III.   THE ALJ'S DECISION

5  The ALJ found at step one that Plaintiff has not engaged in a substantial gainful activity

6  since July 11, 2012. AR 21. At step two, the ALJ found Plaintiff has the following severe

7  impairments: Dupuytren's contracture of the left hand, affective disorder, anxiety disorder with

8  panic attacks, and post-traumatic stress disorder (PTSD). AR 21. At step three, the ALJ found

9  mild restrictions in Plaintiff's daily activities, and moderate difficulties in her social functioning.

10  AR 22. As a result, the ALJ concludes that she does not have an impairment or combination of

11  impairments that meets or medically equals the severity of one of the listed impairments in 20

12  CFR Part 404, Subpart P, Appendix 1. AR 21.)

13  The ALJ found Plaintiff has the residual functional capacity to perform medium work,

14  except that she is limited to frequent handling and fingering with the left upper extremity. AR 22.

15  The ALJ also found that Plaintiff's mental impairments preclude her from working at a job that

16  involves public contact, but she is able to interact with co-workers and supervisors on a superficial

17  basis. AR 22.  The ALJ found that Plaintiff's inability to concentrate precludes work at a

18  production-type pace, but does not preclude work at a job that only require her to complete goals

19  by the end of the day. AR 22.

20  At step four, the ALJ found Plaintiff is unable to perform any past relevant work, including

21  housekeeping. AR 28. At step five, the ALJ found that Plaintiff can work as an auto or aircraft

22  cleaner, or a marker, which are jobs that exist in significant numbers in the national economy. AR

23  28-29. The VE testified that these occupations can be done at medium exertion. AR 28. More

24  importantly, they are not production type pace occupations, because they do not require how much

25  work must be done in an hour, but only require that the work is completed by the end of the day.

26  AR 65-66. Accordingly, the ALJ concluded that Plaintiff can perform other work that exists in the

27  national economy, and, therefore, is not disabled under the Social Security Act. AR 29.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.    DISCUSSION

In her motion for summary judgment, Plaintiff argues that the ALJ erred in denying her application for social security benefits and that the case should be remanded for payment of benefits or, alternatively, for further proceedings for five reasons: (1) the ALJ improperly rejected the opinions of treating physicians Dr. Wilson and Dr. Brusatori; (2) the ALJ improperly gave the most weight to the consulting physician Dr. Kiefer; (3) the ALJ improperly rejected opinions of MFT Castaneda and counselor Malan, (4) the ALJ improperly rejected Plaintiff's testimony, and (5) the ALJ's hypothetical and RFC failed to include all of Plaintiff's limitations. (Pl.'s Mot. at 11-25.)

### A.    The ALJ did not provide specific legitimate reasons supported by substantial evidence in giving little weight to medical opinions of the treating physicians.

The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The opinions of treating medical sources may be rejected only for clear and convincing reasons if not contradicted by another doctor. *Id.*  Where the record contains conflicting medical evidence, the ALJ must make a credibility determination and resolve the conflict. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (quoting *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003)).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence...." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  "The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citations omitted).

### i.    ALJ improperly gave partial weight to the treating physician Dr. Wilson.

In the instant case, the ALJ found that primary care physician Dr. Wilson's opinion was unsupported by objective evidence and discredited her opinion, because "Dr. Wilson's progress notes do not describe severely abnormal medical signs . . . to support her opinion," and her medical treatments have been "of a conservative and symptomatic type without referral for

8

United States District Court
Northern District of California

1    psychiatric care." AR 25. In addition, the ALJ stated that Dr. Wilson's opinion is "also diminished

2    since she referred the claimant to Dr. Brusatori." AR 25.

3          Plaintiff argues that the ALJ erred in weighing the evidence of Plaintiff's treating medical

4    sources. (Pl.'s Mot. at 13-15.)  Specifically, the ALJ failed to provide legitimate reasons to reject

5    Dr. Wilson's opinion by not explaining why the referral to Dr. Brusatori for PTSD or the current

6    treatment undermined her opinion. (Pl.'s Mot. at 13-15.)  Furthermore, Plaintiff contends that the

7    ALJ provided no evidence that the prescribed medications were inappropriate. *Id*. at 16. Dr.

8    Wilson diagnosed Plaintiff with anxiety, PTSD, and other mental disorders, and prescribed anti-

9    depressant medications as part of the course of treatment. *Id*. The ALJ, however, did not explain

10   why these prescriptions were insufficient to support her opinion. AR 25.  Instead, the ALJ

11   concluded that referral for psychiatric care was the appropriate treatment, but did not explain why.

12   AR 25. Thus, the ALJ's decision was not only conclusory, but she failed to properly discredit the

13   treating physician's opinion.

14         The Commissioner relies on *Connett v. Barnhart,* 340 F.3d 871, 875 (9th Cir. 2003), to

15   argue that the ALJ properly gave partial weight to Dr. Wilson, because "her treatment notes fail to

16   support her opinion." (Def.'s Opp'n at 3.)  Defendant argues that Dr. Wilson's opinion conflicted

17   with her notes, and that the treatment prescribed was conservative and "not the sort of intense

18   treatment regimen one would expect if Plaintiff's symptoms were as disabling as were opined by

19   Dr. Wilson." *Id*. The Commissioner contends that the ALJ was correct that had Dr. Wilson

20   referred Plaintiff for psychiatric care, it would have demonstrated that Plaintiff was unable to

21   mentally function in a meaningful way. *Id*. (citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th

22   Cir. 2001)).

23         To the contrary, even if the ALJ was correct in discrediting Dr. Wilson's opinion, the ALJ

24   did not identify why her treatment notes or her referral to Dr. Brusatori were insufficient to

25   support her medical opinion.  Nonetheless, *Rollins* is inapposite, as the treating physician in

26   *Rollins* opined that the patient was totally disabled, but noted that the patient was a well-nourished

27   female in no acute distress, and, as a result, prescribed a conservative treatment meant to avoid

28   stress.  *Rollins*, 261 F.3d at 856. In short, the medical opinion of no acute stress and the prescribed

1    treatment to avoid stress were remarkably inconsistent. *Id.*  Here, however, Dr. Wilson's opinion

2    that Plaintiff suffers mental impairments was consistent with the prescribed anti-depressants.

3    Accordingly, the ALJ's failure to provide legitimate reason to discredit Dr. Wilson's opinion was

4    in error.

5                   **ii.    ALJ improperly gave little weight to the treating physician Dr. Brusatori.**

6              The ALJ also found the opinion of the treating therapist Dr. Brusatori to be unsupported by

7    objective evidence and afforded her opinion little weight. AR 26.  The ALJ states that the Dr.

8    Brusatori provided abnormal clinical signs and symptoms with observations to support the

9    diagnosis of PTSD. *Id.* Dr. Brusatori opined that Plaintiff is unable to perform sustained work

10   activity, which was inconsistent with the opinions of Dr. Kiefer (who did not diagnose PTSD) and

11   Ms. McLaughlin (who only noted symptoms, but stated that Plaintiff did not meet the criteria). *Id.*

12   The ALJ found it notable that Dr. Bruastori "made no mention of a mood disorder or history of

13   polysubstance and alcohol dependence." AR 26.  The ALJ stated that "[t]here are no progress

14   notes or mental examination results to support Dr. Brusatori's opinion." AR 26.  The ALJ also

15   found her opinion inconsistent with Plaintiff's daily activities, which include weekly chores and

16   attending meetings. AR 26. As a result, the ALJ concluded that Dr. Brusatori's opinion should be

17   afforded little weight. AR 26.

18             Plaintiff argues that the ALJ did not provide a valid reason to reject Dr. Brusatori's

19   opinion. (Pl.'s Mot. at 18.) Specifically, Plaintiff argues that her capacity to perform four hours of

20   weekly chores is consistent with Dr. Brusatori's opinion that she cannot perform 40 hours a week

21   of work. *Id.* Plaintiff contends that the requirement for four hours of weekly chores is much less

22   demanding than the requirement of full-time employment. *Id.*  Plaintiff also argues that the ALJ

23   failed to explain why the lack of mental examination results was insufficient to support Dr.

24   Brusatori's opinion. (Pl.'s Mot. at 17.) Plaintiff asserts that Dr. Brusatori provided a "detailed,

25   two-page report of her treatment of Ms. Young and of Ms. Young's signs, symptoms, and

26   diagnoses." *Id*. Plaintiff alleges that the ALJ did not explain why these notes were insufficient to

27   support her opinion. *Id*. As a result, Plaintiff contends that the ALJ did not provide legitimate

28   reasons to discredit Dr. Brusatori's opinion. *Id.*

United States District Court
Northern District of California

United States District Court
Northern District of California

1    In the opposition, the Commissioner argues that the ALJ provided valid reasons for

2    assigning little weight to Dr. Brusatori's opinion, because it conflicted with other evidence. (Def.'s

3    Opp'n at 4.) The Commissioner argues, for instance, that the profound mental limitations in Dr.

4    Brusatori's opinion did not reflect the moderate mental limitations in Dr. Wilson's opinion. *Id*.

5    The Commissioner states that "if Dr. Brusatori's opinion truly reflected Plaintiff's mental state,

6    one would expect to see a recommendation for in-patient treatment in a medical facility." *Id*. And

7    because such treatment was not recommended, her opinion could only be afforded little weight. *Id*.

8    The Commissioner further argues that "although Dr. Brusatori opined that Plaintiff had

9    moderately severe ability to request assistance, she was able to obtain housing, financial assistance

10   and medical care," which demonstrates that Plaintiff could accomplish tasks that Dr. Brusatori's

11   opined she could not. *Id*. at 5. It also argues that her opinion is further diminished, because "Dr.

12   Brusatori failed to note the very significant history of substance abuse." *Id*. Therefore, the

13   Commissioner contends that the ALJ properly gave little weight to her opinion since it is

14   inconsistent with the overall evidence. *Id*.

15   To the contrary, the ALJ failed to acknowledge that Dr. Brusatori's opinion is not

16   inconsistent with other evidence.  Dr. Brusatori opined that Plaintiff "is unable to handle a normal

17   work routine, criticism from others, . . . Ms. Young's symptoms significantly interfere with her

18   ability to work around others." AR 457.  At the hearing, Plaintiff testified that she can clean her

19   bathroom once a week, but when her housemate criticized her, she felt like she was being

20   attacked. AR 59. These statements are consistent, because they demonstrate Plaintiff's inability to

21   handle criticisms and sustain long hours of work.  Furthermore, Plaintiff's capacity to obtain

22   housing with professional help does not mean she is capable of sustaining full time employment

23   on her own. It appears that the ALJ improperly compared the capacity to perform daily routines

24   with the capacity to sustain full time employment, which is not a legitimate reason to discredit Dr.

25   Brusatori's opinion.

26   Lastly, the ALJ's finding that Dr. Brusatori's diagnosis of PTSD was at odds with Dr.

27   Kiefer as a reason to afford her opinion little weight is not legitimate given that the ALJ found that

28   Plaintiff's PTSD constituted a severe impairment at step two.

11

1      For the reasons set forth above, the ALJ did not provide legitimate reasons or substantial

2  evidence to discredit Dr. Brusatori's medical opinion.

3      Generally, the ALJ's failure to provide adequate reasons for rejecting medical opinions

4  requires that they be accepted as true. *Lester*, 81 F.3d at 834 (citing *Hammock v. Bowen,* 879 F.2d

5  498, 502 (9th Cir. 1989)).[5]  Plaintiff's treating physicians agree that Plaintiff experiences

6  limitations at step three.  The ALJ's failure to present any reliable, conflicting medical evidence or

7  specific and legitimate reasons for rejecting the opinions, requires that the Court reverse the ALJ's

8  finding at step three, and remand for further proceedings consistent with this order. *See Treichler*

9  *v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1107 (9th Cir. 2014).

10
11      **B.    The ALJ did not provide specific legitimate reasons supported by substantial
            evidence in giving the most weight to the consulting physician's opinion.**

12      A consulting physician's opinions may serve as substantial evidence when they are

13  consistent with independent clinical findings or other evidence in the record. *Thomas v. Barnhart*,

14  278 F.3d 947, 957 (9th Cir. 2002). Unlike treating physicians who see their patients regularly,

15  consulting physicians typically examine their patients once and for limited purposes, and,

16  therefore, often have limited background information on the patient.  For example, a consulting

17  physician may not have access to medical records to aid in the evaluation of his patient's mental

18  health, and, thus, is required to base his opinion solely on what the patient reported. *Gavin v.*

19  *Heckler*, 811 F.2d 1195, 1200 (8th Cir. 1987). The Eighth Circuit held that the ALJ's improperly

20  relied on consulting physician's opinion, because his admission that he lacked background

21  information "seriously undermine[d]" his opinion. *Id.*

22      Here, Plaintiff argues that the ALJ improperly gave the greatest weight to the consulting

23  physician, Dr. Kiefer, because he had no records to review prior to the examination. (Pl.'s Reply at

24  1.) In the evaluation report dated August 28, 2012, Dr. Kiefer indicated that there was no record

25  available for him to review. AR 319. Further, Plaintiff asserts that Dr. Kiefer "missed diagnosing

26
27  ─────────────────
    [5] That there is evidence in the record that could justify a rejection of those medical opinions is
28  immaterial.  *See Harman v. Apfel*, 211 F.3d 1172, 1178-79 (9th Cir. 2000) (physician's opinion to
    be accepted as true even if there was evidence that could have been used to reject it).

*United States District Court
Northern District of California*

United States District Court
Northern District of California

1   two mental impairments that the ALJ found to be severe." *Id.* Specifically, Dr. Kiefer failed to

2   diagnose Plaintiff with PTSD and affective disorder. AR 21.  Thus, since Dr. Kiefer lacked the

3   medical information necessary to diagnose Plaintiff's mental impairments, his opinion regarding

4   Plaintiff's RFC was deficient. *Id.*  As a result, the ALJ improperly gave the most weight to Dr.

5   Kiefer's opinion.

6        The Commissioner relies on *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001), to argue

7   that the ALJ reasonably gave the most weight to Dr. Kiefer, because his opinion rests on "his own

8   independent examination" of the claimant. (Def.'s Opp'n at 2.) Defendant argues that Dr. Kiefer's

9   opinion that Plaintiff could sustain ordinary routine is proper, because it rests on his independent

10   examination, which includes Plaintiff's ability to perform daily activities and a history of drug

11   abuse. *Id*. The Commissioner's reliance on *Tonapetyan* is misplaced, because the consulting

12   physician's opinion only constitutes substantial evidence if it is consistent with "other independent

13   evidence" in the record, rather than "his own independent examination." *Tonapetyan*, 242 F.3d at

14   1149.  Accordingly, the ALJ improperly afforded the greatest weight to Dr. Kiefer's opinion

15   because, as provided above, his medical opinion is not consistent with other evidence in the

16   record.

17
18        **C.**    **The ALJ improperly rejected evidence from other sources including opinions of M.F.T. Castaneda and counselor Malan.**

19       The Code of Federal Regulations § 404.1513 (d) provides that the SSA may "use evidence

20   from other sources to show the severity of your impairment(s) and how it affects your ability to

21   work." Other sources include the opinion of therapists and counselors. C.F.R. § 404.1513 (d)(2),

22   (3). Although these opinions are entitled to some weight regarding the severity, they cannot

23   establish the existence of a medically determinable impairment. *Huizar v. Comm'r of Soc. Sec.*,

24   428 F. App'x 678, 681 (9th Cir. 2011). The Ninth Circuit held that an ALJ may disregard the

25   opinion of these other sources if he gives "germane" reasons for doing so. *Wake v. Commissioner*

26   *of Social Sec.*, 461 Fed. Appx. 608, 610 (9th Cir. 2011).

27       Here, Plaintiff argues that the ALJ failed to give a germane reason to reject the opinions of

28   M.F.T. Castaneda and counselor Malan. (Pl.'s reply at 12.)  Specifically, Plaintiff contends that

1    the ALJ applied the incorrect legal standard to reject their opinions, since they were rejected on

2    the grounds that they were not "fully substantiated by the medical evidence." *Id*. Plaintiff contends

3    that the ALJ did not reject their opinions because they were inconsistent with the medical records

4    *Id.* Therefore, the ALJ failed to give a germane reason to reject their opinion.

5         The Commissioner responded that the germane reason the ALJ gave to discredit both of

6    the social workers' opinions was that "they were inconsistent with the medical records." (Def.'s

7    Opp'n at 5.)  In support of its position, the Commissioner cites *Bayliss v. Barnhart*, 427 F.3d

8    1211, 1218 (9th Cir. 2005), in which the Ninth circuit held that an ALJ can discredit a social

9    worker's opinions if they are inconsistent with medical evidence.  The Commissioner, however,

10   did not identify which part of their opinion it believed was inconsistent with the medical record,

11   and the ALJ similarly failed to do so. (*See* Def.'s Opp'n at 5.) Therefore, this argument cannot

12   form a basis to reject the social workers' opinions.

13        Indeed, the ALJ conflates the legal requirement of the medical reports with the legal

14   requirement of other sources. The Code of Federal Regulation does not require that the social

15   worker's opinion be substantiated by medical evidence. 20 C.F.R. § 416.913.  Section 416.913(d)

16   prohibits a social worker's opinion to establish the existence of impairment, but allows them to

17   provide relevant information regarding the severity of the impairment.  Here, the ALJ stated that

18   "the undersigned . . . finds a lack of substantiating medical findings for Ms. Malan's opinion.

19   Thus, Mr. Malan's opinion is given little weight." AR 26. Thus, the ALJ misapplied the legal

20   standard, because she required the social worker's opinion to be substantiated by medical evidence

21   when the C.F.R. does not. AR 26. Therefore, the ALJ did not provide a germane reason to

22   discredit their opinions.  As a result, Mr. Malan's observations regarding the severity of Plaintiff's

23   PTSD, namely that she is unable to focus and concentrate, unable to follow instructions, is

24   forgetful, and is unable to tolerate stress must be included in Plaintiff's RFC.

25        **D.    The ALJ improperly rejected Plaintiff's testimony regarding her mental**
26             **impairments.**

27        In evaluating credibility of a claimant's testimony regarding severity of pain and other

28   symptoms, an ALJ must engage in a two-step process analysis. *Lingenfelter v. Astrue*, 504 F.3d

14

1    1028, 1035 (9th Cir. 2007). First, the ALJ must determine whether there is medical evidence of an

2    underlying impairment which could reasonably be expected to produce the alleged symptoms. *Id.*

3    Here, the ALJ found "that there are medical disorders that can be expected to cause the claimant's

4    complaint of left hand pain and emotional symptoms." AR 27. Therefore, the issue is whether the

5    ALJ properly rejected Plaintiff's testimony under the second step.

6         The second step requires that the ALJ specify which testimony she finds not credible, and

7    then provide "specific, clear and convincing reasons" why she finds such testimony not credible.

8    *Lingenfelter*, 504 F.3d at 1036. For example, an ALJ may reject claimant's severe pain testimony

9    when the claimant failed to explain why he did not follow a prescribed course of treatment.

10   *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). It might not be a legitimate reason,

11   however, to reject claimant's testimony based on her capacity to perform daily activities, because

12   impairments that preclude full time employment will often be "consistent with doing more than

13   merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).

14        As an initial matter, Plaintiff does not challenge the ALJ's finding regarding her physical

15   impairments. (Pl.'s Reply at 13.)  Rather, Plaintiff contends that her testimony regarding her

16   mental impairments was improperly discredited. (Pl.'s Mot. at 24.)  Specifically, Plaintiff argues

17   that the ALJ has not identified any specific reason why Plaintiff's account of her activities of daily

18   living contradicts her reported symptoms. *Id.*  Plaintiff argues that her "activities of daily living

19   bolster her symptoms testimony," because they revolve around her group home and medical

20   appointments. *Id.*  Plaintiff never testified that her mental impairments disabled her from these

21   activities. *Id.* Instead, she testified that all she could do were these activities. *Id.* Therefore,

22   Plaintiff contends that the ALJ did not give a legitimate reason to reject her testimony regarding

23   her mental impairments. *Id.*

24        In opposition, the Commissioner argues that the ALJ properly discredited Plaintiff's

25   testimony, because it contradicts her ability to perform a "full range of light daily activities

26   including grocery shopping, doing housework, and laundry." (Def.'s Opp'n at 7.) Further, the

27   Commissioner alleges that Plaintiff "socializes with a friend, runs errands, visits her son, and

28   attends N.A. meetings." *Id.*  In addition to these daily activities, the Commissioner argues that the

United States District Court
Northern District of California

1    extent of the functional loss Plaintiff alleged is inconsistent with the conservative treatment she

2    received. *Id.* at 8.  The Commissioner contends that Plaintiff's testimony was properly rejected,

3    because it contradicts the overall evidence. *Id.*

4            The Court disagrees.  As discussed above, Plaintiff's "conservative treatment" resulted in

5    prescriptions for anti-depressants and a referral to a licensed therapist. *See* discussion *supra* Part

6    IV.A. To find that any treatment short of institutionalization means that a claimant's testimony is

7    not credible is troubling given that she resides in a group home due to her disabilities and chronic

8    homelessness.

9            Furthermore, the ALJ's failure to identify which testimony was inconsistent with which

10   evidence was in error.  In the decision, the ALJ rejected Plaintiff's testimony, because "[h]er daily

11   activities are also inconsistent with her alleged limitations." AR 27.  Specifically, the ALJ stated

12   that Plaintiff's ability to take care of herself by seeking a homeless shelter and attending AA and

13   NA meetings are inconsistent with her alleged limitations. *Id.* At the hearing, Plaintiff testified that

14   her mental impairments limited her to these activities and nothing more. AR 37-62. There is a

15   substantial difference between seeking out shelter and attending a meeting with the ability to

16   maintain gainful employment, which was not addressed by the ALJ.

17           Likewise, the ALJ did not specify what parts of Plaintiff's testimony were inconsistent

18   with the medical evidence. The ALJ stated that "[t]he medical opinions of record are varied and . .

19   . do not corroborate the degree of symptoms and limitations described by the claimant." AR 28.

20   Plaintiff testified that she has experienced panic attacks when she was in a big crowd, or when

21   people criticized her. AR 54, 56. Thus, it is unclear which medical opinion was inconsistent with

22   each of the alleged symptoms, especially since the ALJ did not specify any. Rather, the ALJ states

23   that the medical opinions of record are varied, and when considered as a whole, found that

24   Plaintiff's testimony was not entirely credible. AR 28. By not identifying which testimony was

25   inconsistent, the ALJ did not provide substantial evidence to support her rejection of Plaintiff's

26   testimony regarding her mental impairments.

27   **E.    The ALJ's hypothetical and RFC failed to include all of Plaintiff's limitations**

28           Plaintiff contends that the ALJ's RFC determination was not supported by substantial

United States District Court
Northern District of California

16

1    evidence and failed to consider all of Plaintiff's non-exertional limitations due to the improper

2    weighing of evidence.  (Pl.'s Mot. at 25.)  In opposition, Defendant argues the ALJ properly

3    credited the functional limitations that were supported by evidence which resulted in a proper RFC

4    determination.  (Def.'s Opp'n at 9.)

5         A claimant's RFC is what the claimant is capable of doing despite his or her mental and

6    physical limitations.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Valentine v. Comm'r Soc. Sec.*

7    *Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir.

8    2001).  An RFC is "an assessment of an individual's ability to do sustained work-related physical

9    and mental activities in a work setting on a regular and continuing basis." SSR 96-8p.  The ALJ

10   must consider all relevant evidence in formulating an RFC, and "an RFC that fails to take into

11   account a claimant's limitations is defective."  *Valentine*, 574 F.3d at 690.  The ALJ's findings

12   may be set aside if not supported by substantial evidence.  *McCartey v. Massanari*, 298 F.3d 1072,

13   1075 (9th Cir. 2002); *Smolen*, 80 F.3d at 1279.  An ALJ may omit limitations arising out of a

14   claimant's subjective complaints only if the subjective complaints have been properly discredited.

15   *See Lingenfelter*, 504 F.3d at 1040-41 (RFC excluding subjective limitations was not supported by

16   substantial evidence where the ALJ did not provide clear and convincing reasons for discrediting

17   claimant's testimony).

18        In opposition, the Commissioner argues that the ALJ "need not include limitations that are

19   unsubstantiated by objective medical evidence, or that are based in subjective complaints that were

20   properly discounted." (Def.'s Opp'n. at 8.) And since the only opinion that is substantiated by

21   objective medical evidence is Dr. Kiefer's, the ALJ reasonably relied on the VE's testimony. *Id*. at

22   9.

23        Here, the ALJ concluded that Plaintiff has the functional capacity to perform medium

24   work, and is limited to simple, routine, repetitive tasks. AR 22.  She is precluded from work

25   involving production type pace, and precluded from work involving public contact, but is capable

26   of superficial contact with coworkers and supervisors. *Id.*  Based on the RFC and the VE

27   testimony, the ALJ found that Plaintiff can work as an auto or aircraft cleaner, or a marker, which

28   are jobs that exist in significant numbers in the national economy. AR 28-29.

United States District Court
Northern District of California

1    The ALJ's improper weighing of the medical evidence affects her RFC determination,

2    because she omitted several limitations, including those identified by Drs. Wilson and Brusatori.

3    For example, the ALJ did not consider Dr. Brusatori's opinion that Plaintiff is both unable to

4    maintain concentration for a two hour period and complete a normal workday or workweek

5    without interruptions from psychologically based symptoms. AR 459.  As a result, the ALJ's RFC

6    determination was flawed, because it failed to include all of Plaintiff's limitations.

7    Accordingly, the RFC used in the hypotheticals, which were relied upon by the ALJ, did

8    not include all of Plaintiff's limitations.

9    ## V.    CONCLUSION

10    For the reasons set forth above, Plaintiff's motion for summary judgment is GRANTED,

11    Defendant's cross-motion for summary judgment is DENIED, and this action is REMANDED to

12    the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings.

13    Specifically, the case is remanded to step three to include the limitations identified by Drs. Wilson

14    and Busatori in Plaintiff's residual functional capacity, as their opinions must be taken as true, and

15    to conduct a new administrative hearing to obtain additional vocational expert testimony,

16    consistent with this order.

17    IT IS SO ORDERED.

18    Dated: September 27, 2016

19    _____

20    KANDIS A. WESTMORE
      United States Magistrate Judge

21

22

23

24

25

26

27

28

United States District Court
Northern District of California